IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES J. HANSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 2022 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff James J. Hanson has sued defendant Experian Information Solutions, Inc., under the Fair Credit Reporting Act ("FCRA") alleging that defendant: (1) failed to follow "reasonable procedures to assure the maximum possible accuracy" of the information in plaintiff's consumer report in violation of 15 U.S.C. § 1681e(b); and (2) defendant's failure to conduct a "reasonable reinvestigation" upon receipt of plaintiff's dispute that information in his consumer report was inaccurate in violation of § 15 U.S.C. § 1681i(a)(1). Defendant has moved for summary judgment, arguing that it reported plaintiff's account accurately as a matter of law and that its reinvestigation was reasonable as a matter of law. Because key material facts remain in dispute, defendant's motion is denied.

## **FACTS**

Sometime in late summer 2009 plaintiff began receiving notices from various banks that his credit accounts were being cancelled or his credit limits reduced because of negative information appearing on his credit report. In November 2009 plaintiff telephoned Trans Union, LLC to ask about the source of the negative information. He learned that Barclays Bank Delaware had reported him as being delinquent on a credit card. Plaintiff later learned that the account also appeared on an Experian credit report dated December 24, 2008.

At that time plaintiff had a Barclays credit card account ending in # 9790. That account was in good standing and was listed under plaintiff's then current address on Farwell Avenue in Chicago, where he had lived since May 2007. The reportedly delinquent card had an account number ending in #0234 and was listed as a negative item opened in April 2008, with a past due amount of $211. The account showed that plaintiff had never made a payment. The delinquent account was listed under plaintiff's previous address on Claremont Avenue in Chicago. Plaintiff had not lived at that address since early 2007.

Plaintiff later learned that the allegedly delinquent account was an AirTran credit card offer by Barclays that plaintiff had applied for but never received, activated, or used. Plaintiff applied for the card in April 2008 while traveling. He was solicited to apply for the card while at the airport in Atlanta, Georgia. According to plaintiff, someone approached him on foot, offering free AirTran tickets as among the benefits for use of the card. Plaintiff has testified that he was never informed of the terms and conditions of the card. He filled out a paper application on which he provided his current address on Farwell Avenue.

A few weeks later plaintiff received a letter at his Farwell address from AirTran explaining the rewards program. Plaintiff had not received the AirTran card or any paper work from Barclays. Because he never received the card, he never activated or used it.

The person who solicited plaintiff at the airport worked for a third-party company hired (apparently by Barclays) to solicit credit card applications. Barclays did not receive the paper application, and neither Barclays nor Experian has produced it. Barclays relies on the third-party company to mail the applicant the card member agreement, the credit card, and the terms and conditions upon approval. Barclays has produced a printout of a computerized version of

2

plaintiff's application that indicated plaintiff's address as on Claremont. Barclays' records show that the card and card member agreement were mailed to plaintiff at the Claremont address on May 6, 2008.

The terms and conditions of the card indicate that there is an annual fee. They also provide, "I understand that the use of any account opened or any card issued in connection with this offer will constitute my acceptance of and will be subject to the terms and conditions of the Barclays' card member agreement that will be sent to me." The amounts owed on the account consist solely of the annual fee and interest.

Barclays' records indicate that the plaintiff called them on November 21, 2009, to "update the address" associated with the account. Plaintiff does not recall calling Barclays or ever contacting Barclays about the account.

On February 1, 2010, plaintiff wrote to Experian indicating that in reviewing his credit report he found a negative item with which he disagreed, indicating that the item was the Barclays card. His letter stated, "[T]his card was never issued to me nor did I ever use this card. I am unaware of how a balance of $211 was incurred. I would appreciate it if you could look into this matter and inform me how something like this could have happened."

After receiving the letter, defendant contacted Barclays via an Automated Consumer Dispute Verification ("ACDV") form, quoting plaintiff's letter. The ACDV form listed the Farwell address as plaintiff's current address and the Claremont address as plaintiff's previous address. Barclays responded with a simple generic code "01-account information accurate as of date reported." Barclays marked in its response that its records showed the Farwell address was the "same" and the Claremont address was "unknown."

3

In addition to sending Barclays the ACDV form, defendant claims to have reviewed its own records to determine that the Barclays' account was accurately reported on plaintiff's credit report. On February 24, 2010, defendant mailed to plaintiff the results of its reinvestigation and a summary of his rights under the FCRA.

## DISCUSSION

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes or facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant has the initial burden of pointing out the absence of a genuine issue of material fact. Once the movant has met that burden, the nonmoving party must go beyond the pleadings and present specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. Ltd.v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The complaint alleges that defendant violated the FCRA by failing to maintain reasonable procedures to assure maximum possible accuracy of plaintiff's credit report in violation of §1681e(b) and failing to conduct a reasonable reinvestigation of plaintiff's consumer dispute in violation of § 1681i. Defendant has moved for summary judgment on both claims, raising a variety of arguments.

4

First, defendant argues that both of plaintiff's claims fail as a matter of law because defendant accurately reported the Barclays' account. A prima facie case under both §1681e and §1681i requires plaintiff to establish that the information published by the credit reporting agency ("CRA") was inaccurate. DeAndrade v. Trans Union LLC, 523 F.3d 61, 67 (1st Cir. 2008). To support its argument, defendant states in its opening memorandum (p. 5) "the undisputed evidence shows that plaintiff applied for the Barclays Account in April 2008 with the 6500 N. Claremont Ave. ... address. When plaintiff applied for the Barclays Account, he was informed both orally and in writing that there would be an annual fee for the card, and that failure to pay amounts owed on the account, including the annual fee, could subject the account to interest, late fees, and adverse credit reporting."

Defendant has a very myopic view of the record. Plaintiff of course disputes that he signed up for the card under the Claremont address, and there is no reason he would have done so, given that he had not lived on Claremont for almost a year at the time he filled out the paper application. Plaintiff has also stated that he was not informed, either orally or in writing, of the terms and conditions of the account. Those terms and conditions indicate, as plaintiff notes, that "I understand that the use of any account opened or any card issued in connection with this offer with constitute my acceptance of and will be subject to the terms and conditions of the Barclays' card member agreement that will be sent to me." Because, according to plaintiff the card and statements were sent to the Claremont address, he never received them, never activate or used the card, and never accepted the terms and conditions. Because there is a dispute as to the material facts surrounding plaintiff's application for the card, defendant cannot establish that it accurately reported the account. Summary judgment on this claim is therefore denied.

Next, defendant argues that plaintiff has failed to identify a "factual discrepancy" on his credit report sufficient to trigger a duty to reinvestigate under §1681i. See DeAndrade, 523 F.3d at 68. Essentially, defendant argues that plaintiff identified a legal dispute with Barclays the merits of which defendant could not and is not required by the FCRA to determine. According to defendant, no reasonable investigation on its part could have uncovered any inaccuracy in plaintiff's credit report. Thus, defendant argues, plaintiff "crosses the line between alleging a factual deficiency that defendant was obliged to investigate pursuant to the FCRA and launching into an impermissible collateral attack against Barclays' right to seek payment on the Barclays Account."

This argument in belied by defendant's own records which, at the time defendant received plaintiff's dispute letter, showed that plaintiff had another Barclays account in good standing listed under plaintiff's correct address. Indeed, defendant's records showed that every one of plaintiff's active accounts listed the Farwell address, and that every account that had been associated with the Claremont address was closed. Therefore, defendant possessed evidence available that suggested a problem with the disputed Barclays account. According to plaintiff, defendant never reviewed that evidence or chose to ignore it.

Next, defendant argues that despite having no duty to reinvestigate, it did so and its reinvestigation was reasonable as a matter of law. According to defendant a CRA complies with the reinvestigation requirement by contacting the furnisher of the disputed information to verify the accuracy. 15 U.S.C. § 1681i(a)(1)(A). Defendant did this by sending Barclays the ACDV form, which it argues is sufficient as a matter of law. See e.g., Lee v. Experian Information Solutions, 2003 WL 2287351 at *3 (N.D. Ill. 2003). It then argues that nothing in Barclays'

response or defendant's own records suggested that the Barclays' account did not belong to plaintiff. But Barclays' response to the ACDV form listed the Claremont address as "unknown," and listed Farwell as plaintiff's current address. And, as noted above, defendant's records indicate that at least eleven of plaintiff's credit accounts had been changed from the Claremont address to the Farwell address before plaintiff applied for the Barclays account at issue. A rational trier of fact could conclude that those records gave defendant reason to believe that Barclays' information about the disputed Barclays account was inaccurate.

Finally, defendant argues that plaintiff cannot establish that defendant's reporting of the Barclays account caused him any injury. Plaintiff seeks statutory damages for willful violations, and has alleged that defendant's actions have caused him emotional distress. Plaintiff's own testimony, if it provides reasonable detail, is sufficient to support such a claim. Ruffin-Thompkins v. Experian Information Solutions, Inc., 422 F.3d 603, 609 (7th Cir. 2005). Plaintiff has submitted his own testimony and that of an expert witness to support his claim for damages. Additionally, plaintiff has provided some evidence that defendant's credit report was viewed by third-party businesses during the time period of alleged inaccurate reporting, and that the credit report may have contributed to adverse credit actions. Although plaintiff's evidence of damages is rather weak, it is sufficient to survive summary judgment.

## **CONCLUSION**

For the reasons set forth above, defendant Experian's motion for summary judgment is denied.

**ENTER:** January 27, 2012

_____
**Robert W. Gettleman**
**United States District Judge**